UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 22-10200-WGY |
| BIOGEN INC., MICHEL VOUNATSOS, AND ALISHA ALAIMO, | ) ) ) | |
| Defendants. | ) ) ) | |

YOUNG, D.J.                                    March 30, 2026

## MEMORANDUM AND ORDER

This dispute stems from statements that pharmaceutical executives made during the launch of the drug Aduhelm. The lead plaintiff is the Oklahoma Firefighters Pension and Retirement System ("the Firefighters"), and the defendants are Biogen, Inc. ("Biogen"), Michel Vounatsos ("Vounatsos"), and Alisha Alaimo ("Alaimo"). Vounatsos was the Chief Executive Officer of Biogen, and Alaimo was the President of Biogen U.S. at all relevant times. Assented Conforming Compl. ¶¶ 24-25, ECF No. 203. After extensive briefing, this Court certified a class under Federal Rule of Civil Procedure 23 for the period from June 8, 2021, through July 12, 2021, based on statements concerning Medicare Coverage. Electronic Order, ECF No. 100;

[1]

Electronic Order, ECF No. 108; see Pl.'s Mem. Supp. Mot. Cert. Class 1, ECF No. 80.

Biogen filed the instant motion for summary judgment and memorandum in support on February 2, 2026.  Defs.' Mot. Summ. J., ECF No. 177; Mem. Supp. Defs.' Mot. Summ. J. ("Defs.' Mem."), ECF No. 178.

On February 11, 2026, this Court ALLOWED the addition of "Payor Statements," but DENIED the Firefighters' request to modify the class period.  Electronic Clerk's Notes, ECF No. 185; see Mem. Supp. Pl.'s Renewed Mot. Am., ECF No. 153.

In its  motion for summary judgment, Biogen argues that the Firefighters have failed to carry its burden to demonstrate "loss causation" as required by the Securities Exchange Act of 1934 and Rule 10b-5.[1]  The Firefighters counter  that its expert report, prepared by Professor Steven P. Feinstein, establishes loss causation as required to make its prima facie case.[2]  See

---

[1] Biogen includes arguments throughout the motion for summary judgment that assume that the third amended complaint, ECF No. 187, was denied in its entirety and that the Payor Statements were not added, as the Motion was filed before this Court ruled on the Third Amended Complaint.  The Court disregards the arguments relating to the Payor Statements as they are now moot.

[2] The Court acknowledges and, at this time, expressly declines to rule on the pending motion to exclude, in part, the opinions and testimony of Professor Steven P. Feinstein and response.  Defs.' Mot. Exclude Part Op. Test. Professor Steven P. Feinstein, ECF No. 175; Lead Pl.'s Opp'n Defs.' Mot. Exclude Part Op. Test. Prof. Steven P. Feinstein, ECF No. 192.

Lead Pl's. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 193; Report Loss Causation Damages Professor Steven P. Feinstein, dated January 21, 2025 (the "Feinstein Report" or "the Report"), ECF No. 180-1.  The motion has been fully briefed.  See Reply Mem.  Supp. Defs.' Mot. Exclude Part Op. & Test. Professor Steven P. Feinstein & Mot. Summ. J., ECF No. 200.  This Court held a hearing on the matter on March 25, 2026.  See Electronic Clerk's Notes, ECF No. 205.  Having heard the parties, Biogen's motion for summary judgment is **DENIED**.

## A. The Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute of material fact."  Quintana-Dieppa v. Department of Army, 130 F.4th 1, 7 (1st Cir. 2025) (citing Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 26-27 (1st. Cir. 2019); Fed. R. Civ. P. 56(a)).  "The moving party bears the initial burden of demonstrating that 'the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'"  Securities & Exch. Comm'n v. Sharp, 692 F. Supp. 3d 9, 10-11 (D. Mass. 2023) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[3]

"To plead a viable cause of action under Section 10(b)-5 of the Securities Exchange Act of 1934, plaintiffs must plead: '(1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'" Quinones v. Frequency Therapeutics, Inc., 665 F. Supp. 3d 156, 167 (D. Mass. 2023) (citing Hill v. Gozani, 638 F.3d 40, 55 (1st Cir. 2011)), aff'd, 106 F.4th 177 (1st Cir. 2024). The present motion for summary judgment argues that the Firefighters have failed to proffer sufficient evidence to prove the element of loss causation.

**B. The Feinstein Report**

The Feinstein Report, at issue in the current motion, is the third expert report produced by Professor Feinstein.[3] No concerns have yet been raised concerning the two previous reports created by Professor Feinstein. The instant report focuses on loss causation, as well as the quantification of per-share damages. Feinstein Report ¶ 6. It utilizes an incorrect class period, June 7, 2021 to September 8, 2021, which this Court rejected in its ruling on the third amended complaint.[4]

---

[3] Feinstein produced an initial report in May of 2024, ECF No. 79-1, and a reply report to Biogen's expert report in July of 2024, ECF No. 90-2.

[4] The operative class period is June 8, 2021, through July 12, 2021. See Electronic Clerk's Notes, ECF No. 185.

The Report also analyzes statements that the Court excluded from the third amended complaint.[5]

### C. Loss Causation

The First Circuit holds that an expert report, specifically an event study, is the "usual" and "preferred" manner to prove to the factfinder (here, the jury) the element of loss causation in a securities action. See Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82, 86 (1st Cir. 2014). A plaintiff may establish loss causation through an expert witness by:

> (1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud);
> (2) showing that the stock price dropped soon after the corrective disclosure; and
> (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure -- as opposed to other possible depressive factors -- that caused at least a "substantial" amount of the price drop.

Shash v. Biogen, Inc., 84 F.4th 1, 20 (1st Cir. 2023) (quoting Massachusetts Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229, 237-38 (1st Cir. 2013)). Biogen argues that the Firefighters have failed to establish the third factor, as the Feinstein

---

[5] The Court has allowed the "Payor Statements" and "Automatic Medicare Coverage Statements" to move forward and denied the "Interim Coverage" statements. See Feinstein Report ¶¶ 37-38, 40-41, 120, 122.

Report did not appropriately disaggregate "other possible explanations" for the price drop on June 24, 2021. See Defs.' Mem. 14-18.

The loss causation analysis here focuses on event studies, which measure how much a "stock price rises or falls in response to new, company-specific information." Feinstein Report ¶ 131. The Feinstein Report identifies three individual dates and corresponding disclosures for the event study. Of these three dates, only one -- June 24, 2021 -- falls within the approved class period.[6] Feinstein Report ¶ 177. The Court considers only the one date included in the class period, as each date is analyzed independently.

Biogen argues that the Feinstein Report does not sufficiently establish loss causation because the report fails to disaggregate the allegedly fraudulent statements made by Biogen executives on June 24, 2021, from other market factors on that date that may have affected the stock price.[7] Defs.' Mem. 15-18. The market factor that Biogen alleges the Feinstein Report improperly accounts for is Eli Lilly (a competitor)

---

[6] The other two dates are July 15, 2021, and September 9, 2021. See Feinstein Report ¶¶ 179, 181.

[7] The statements made on June 24, 2021, by Senators Elizabeth Warren, Bill Cassidy, and Secretary Becerra were identified as correcting allegedly fraudulent representations relating to the Payor Statements and Medicare Coverage Statements. See Feinstein Report ¶ 162.

[6]

announcing the Food and Drug Administration designation of "Breakthrough Therapy" for its competing Alzheimer's drug. See Defs.' Mem. 15, 17. Biogen argues that the Feinstein Report, in the event study for June 24, 2021, relied solely on a Guggenheim report that accounted for both (1) the Eli Lilly announcement and (2) a survey of neurologists, and failing to disaggregate these two factors. Id. at 17. Biogen argues that the Feinstein Report's exclusive reliance on this Guggenheim report is incapable of demonstrating loss causation as matter of law.

The Firefighters argue that the Feinstein Report does, in fact, disaggregate the effect of the allegedly fraudulent Biogen statements from the Eli Lilly announcement.[8] See Pl.'s Opp' n 7. They point to the Feinstein Report, where the Eli Lilly announcement is discussed extensively. See Feinstein Report ¶¶

---

[8] The Firefighters also argue for the application of a test that has not been utilized in the First Circuit, which would place the burden of disproving the effect of confounding factors on Biogen. See Pl.'s Opp'n 9 (citing Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645 (7th Cir. 1997); Hsingching Hsu v. Puma Biotechnology, Inc., No. SACV1500865AGJCGX, 2018 WL 4945703, at *9 (C.D. Cal. Oct. 5, 2018)). Under the Firefighters' preferred framework, Biogen would bear the burden of showing that the depreciation in stock was entirely attributed to factors other than the allegedly false statements. Id. The Firefighters do not cite any First Circuit case law to support the application of this test in either the Court of Appeals or any in-circuit district courts. This test appears to represent a departure from the existing First Circuit precedent, and therefore the Court does not adopt it.

62-66, 197-201. Feinstein's treatment of the Guggenheim report reads as follows:

> Guggenheim reported that it performed a valuation of Biogen stock that was based on market conditions before the 24 June 2021 developments, but was adjusted to incorporate the news of the earlier-than-expected Eli Lilly competition. Based on this valuation, Guggenheim reduced its price target for Biogen stock by $9.00 per share . . .
>
> It is noteworthy that Eli Lilly's efforts to advance its competition to Biogen could have been due at least in part to the unfolding resistance to Biogen's product, which would mean that that competition news was not entirely confounding, but rather a consequence of the allegation-related corrective disclosures. As such, less than the $9.00 per share amount attributed to the Eli Lilly news is truly the effect of confounding information. I understand that Lead Plaintiff will present evidence supporting that some of this $9.00 per share decline attributable to the Eli Lilly news constitutes damages caused by the alleged misrepresentations and omissions. However, to provide a conservative measure of damages, in this report I treat all of the $9.00 as stemming from confounding information.

Id. ¶¶ 198, 200. As a factual matter, the Feinstein Report does consider and address the Eli Lilly announcement. The Report also includes quotes from the Guggenheim report that discuss the survey of neurologists as being incorporated into the price. See Feinstein Report ¶ 198. The Firefighters further argued at the hearing that the question of whether Feinstein appropriately relied on the Guggenheim report, which considered both the Eli Lilly announcement and the survey of neurologists, is a classic question for the trier of fact. For example, a reasonable jury may ultimately find, contrary to Feinstein's assertions, that

Guggenheim's $9.00 price reduction was too low, as the $9.00 price reduction included a decrease in price due to the Eli Lilly announcement that was mitigated by the positive news from the neurologist survey.

Biogen relies heavily on Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82 (1st Cir. 2014), and argued at the hearing that the Firefighters bear the burden of absolutely ruling out any confounding market factors.  Under this Court's reading of the First Circuit's analysis in Bricklayers, the required proof of disaggregation does not go this far, and the case is factually distinguishable from the expert report at issue here.

In Bricklayers, the First Circuit affirmed Judge Gorton's exclusion of an expert report based partially upon its failure to disaggregate factors as required to prove loss causation. 752 F.3d at 95-96.  The First Circuit stated that "when conducting an event study, an expert must **address** confounding information that entered the market on the event date."  Id. at 95 (emphasis added).  The First Circuit found that the expert in Bricklayers "seemingly made a judgment call as to confounding information without any methodological underpinning."  Id.  The District Court described the methodology as such: the expert's "principal approach [] to read all the AOL-related news released on a given day and to make subjective judgments about which news

[9]

impacted the stock price" was insufficient.  Bricklayers &
Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston,
853 F. Supp. 2d 181, 190 (D. Mass. 2012) (Gorton, J.), aff'd sub
nom. Bricklayers, 752 F.3d 82, 90 (1st Cir. 2014).  The First
Circuit ruled that this methodology was improperly "subjective"
because, as an example, the expert did not utilize tools like
intra-day trading analysis or content analysis.  Bricklayers,
752 F.3d at 95-96, n.12.  Importantly, Judge Gorton and the
First Circuit found several other issues with the expert report
before excluding it, including overusing dummy variables,
selecting event dates to backfill the regression, and
considering disclosures prior to the event dates.  See id. at
91-96.

Conversely, here, there is only a single, relatively minor
issue with an expert report that relied on a report neither
party seems to characterize as "cherry-picked" or "subjective."
Id. at 92, 95.  Thus, Bricklayers does not create the stringent
exclusion requirement that Biogen claims nor does it represent a
mirror-image factual comparison for the instant case.  Feinstein
certainly, at a minimum, "addressed" the Eli Lilly announcement
throughout the report.  By utilizing the Guggenheim report,
which accounts for the Eli Lilly announcement, Feinstein was not
merely making unsupported "subjective judgments" about how that
announcement impacted Biogen's stock price.  Unlike in

[10]

<u>Bricklayers</u>, in this Court's view, Biogen has not persuasively demonstrated that the Feinstein Report is "a judgment call as to confounding information without any methodological underpinning." <u>Id.</u> at 95. Ultimately, if qualified as an expert at trial, the jury will assess the weight and credibility of Feinstein's testimony with respect to loss causation. Summary judgment is therefore unwarranted.

### D. Conclusion

Under <u>Bricklayers</u>, the Feinstein Report need not absolutely rule out other confounding events. Rather, it must "address" them. 752 F.3d at 95. The Feinstein Report does so. Taking every reasonable inference in favor of the Firefighters, a reasonable jury could find that loss causation could be established from Feinstein's eventual testimony based on the Feinstein Report. For these reasons, the motion for summary judgment (ECF No. 177) is **DENIED**.

This memorandum and order only addresses and rejects the legal interpretations proffered by the parties (<u>see</u> n. 8 <u>supra</u>): The Court expresses no opinion as to whether Feinstein can express an opinion concerning the actual per share dollar impact of these various market influences, or, indeed, whether he is qualified to opine on the relative market impacts of these influences. The Court accepts that Feinstein has adequately "addressed" this issue at summary judgment because it must draw

[11]

all reasonable inferences in favor of the non-moving party, the
Firefighters.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[9]

_____

[9] This is how my predecessor, Peleg Sprague (D. Mass. 1841–1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.