**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, AND ALISHA ALAIMO,<br><br>Defendants. | Case No. 22-cv-10200-WGY<br><br><u>CLASS ACTION</u> |

**STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT**

This Stipulation and Agreement of Class Action Settlement, dated June 5, 2026 (the "Stipulation" or the "Settlement Agreement"), submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules") embodies a settlement (the "Settlement") made and entered into between: (i) Lead Plaintiff and certified class representative Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff"), on behalf of itself and each of the members of the Class, as defined in ¶¶ 1.3-1.4, infra, on the one hand, and (ii) Defendants Biogen Inc., Michel Vounatsos, and Alisha Alaimo ("Defendants"), on the other hand, by and through their counsel of record in the above-captioned litigation pending in the United States District Court for the District of Massachusetts (the "Litigation"). Lead Plaintiff on behalf of itself and the Class Members and Defendants are, together, referred to herein as the "Settling Parties."

This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Plaintiff Claims, as defined in ¶ 1.22, *infra*, upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section 1, *infra*.

**WHEREAS:**

A.     The initial complaint in this Litigation was filed on February 7, 2022 in the United States District Court for the District of Massachusetts (the "Court") captioned *Oklahoma Firefighters Pension and Retirement System v. Biogen Inc. et al.*, Case No. 1:22-cv-10200-WGY (D Mass.), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, against Defendant Biogen Inc. ("Biogen" or the "Company"), and certain individuals, including Defendant

1

Michel Vounatsos ("Vounatsos"). ECF No. 1. On May 10, 2022, the Court appointed Lead Plaintiff and the firm of Block & Leviton LLP as Lead Counsel. ECF No. 23.

B.    On June 27, 2022, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint") asserting claims against Defendant Biogen and certain individuals, including Defendant Vounatsos and Defendant Alisha Alaimo ("Alaimo") under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the individually named defendants under Section 20(a) of the Exchange Act. ECF No. 30.

C.    On July 27, 2022, the named defendants moved to dismiss the First Amended Complaint. ECF No. 39. Lead Plaintiff filed its opposition on August 26, 2022. ECF No. 44. The named defendants filed their reply on September 15, 2022. ECF No. 48.

D.    On March 29, 2023, the Court entered an order granting the motion to dismiss the First Amended Complaint and closing the case. ECF No. 59.

E.    On April 26, 2023, Lead Plaintiff filed a Motion to Alter or Amend the Judgment and to Amend the Complaint. ECF No. 61. The Proposed Second Amended Complaint for Violations of the Federal Securities Laws sought to assert claims against Defendant Biogen, Defendant Vounatsos, and Defendant Alaimo under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against Vounatsos and Alaimo under Section 20(a) of the Exchange Act. ECF No. 61-1. Defendants filed an opposition on May 10, 2023. ECF No. 64. On September 21, 2023, Lead Plaintiff filed a reply. ECF No. 67.

F.    On March 19, 2024, the Court entered an order granting in part and denying in part the motion to alter or amend the judgment and to amend the complaint. ECF No. 68. The Court reopened the case. ECF No. 70.

G.      On April 10, 2024, Lead Plaintiff filed the Second Amended Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint"). ECF No. 75.

H.      On May 15, 2024, Defendants filed an unopposed Motion to Strike Allegations from the Second Amended Complaint, ECF No. 82. which the Court granted on May 16, 2024. ECF No. 83.

I.      On May 30, 2024, Defendants filed their answer and affirmative defenses in response to the Second Amended Complaint. ECF No. 86. Among other things, Biogen, Vounatsos, and Alaimo's answer denied Lead Plaintiff's allegations of wrongdoing and asserted various defenses to the claims pled against Defendants.

J.      On May 10, 2024, Lead Plaintiff filed a Motion to Certify Class, Appoint Class Representative, and Appoint Counsel. ECF No. 79. Defendants filed an opposition on June 21, 2024. ECF No. 87. Lead Plaintiff filed a reply on July 19, 2024, ECF No. 90, and Defendants filed a sur-reply on July 24, 2024, ECF No. 94. On September 5, 2024, by electronic order, the Court granted the motion in part, certifying a class of investors who acquired Biogen common stock from June 8, 2021 through July 12, 2021, appointing Lead Plaintiff as class representative, and appointing Block & Leviton LLP as class counsel. ECF No. 100, ECF No. 108.

K.      On September 19, 2024, the Parties filed, with the United States First Circuit Court of Appeals, cross Petitions for Permission to Appeal Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. *See Okla. Firefighters Pen. & Ret. Sys. v. Biogen Inc.*, Nos. 24-8026, 24-8927 (1st. Cir.). The Parties filed Answers to the cross petitions on September 30, 2024. *See id.*

L.      While the petitions remained pending with the First Circuit, on November 13, 2024, Lead Plaintiff filed a Motion to Amend the Complaint in Light of Evidence Produced in Discovery

and a related Motion to Modify the Class Period. ECF No. 121; ECF No. 123. Defendants filed oppositions to both motions on November 27, 2024. ECF No. 137; ECF No. 139.

M.      On December 9, 2024, the First Circuit issued an order directing the Court to "enter a memorandum reflecting the 'rigorous analysis' of relevant Rule 23 facts required by precedent" within 60 days. ECF No. 143. On February 4, 2025, the Court entered a Report and Order in response to the First Circuit's order. ECF No. 145. The Report and Order set out the Court's reasoning for its decision to certify a class period shorter than Lead Plaintiff had sought, denied without prejudice Lead Plaintiff's motion to amend and motion to modify the class period, and pushed out the deadlines to file dispositive motions and by which the case must be ready for trial to allow the First Circuit time to rule on the petitions for permission to appeal. *Id.*

N.      On February 25, 2025, the Parties filed amended cross Petitions for Permission to Appeal under Rule 23(f) of the Federal Rules of Civil Procedure. *See Okla. Firefighters Pen. & Ret. Sys. v. Biogen Inc.*, Nos. 24-8026, 24-8927 (1st. Cir.). And on March 18, 2025, the Parties filed Answers to the amended cross petitions. On April 9, 2025, Defendants filed a Motion for Leave to file Reply in Support of Their Amended Petition for Permission to Appeal. *See Okla. Firefighters Pen. & Ret. Sys. v. Biogen Inc.*, No. 24-8927 (1st. Cir.). On April 15, 2025, Lead Plaintiff filed a Motion for Leave to file Sur-Reply in Opposition to Defendants' Amended Petition for Permission to Appeal. *See id.* On September 18, 2025, the First Circuit issued a judgment denying both of the Parties' petitions for permission to appeal. ECF No. 151.

O.      On September 22, 2025, Lead Plaintiff filed a renewed Motion to Amend the Complaint in Light of Evidence Produced in Discovery and a renewed Motion to Modify the Class Period. ECF No. 152; ECF No. 155. On October 6, 2025, Defendants filed oppositions to both motions. ECF No. 158; ECF No. 159. On October 14, 2025, Lead Plaintiff filed an omnibus reply

brief in support of both motions. ECF No. 163. On October 20, 2025, Defendants filed a sur-reply brief in opposition to both motions. ECF No. 167. On February 11, 2026, the Court held oral argument on Lead Plaintiffs' motions; ruling from the bench, the Court denied the Motion to Modify the Class Period and granted in part the Motion to Amend. ECF No. 185.

P.     On February 2, 2026, Defendants filed a Motion to Exclude, in Part, The Opinions and Testimony of Professor Steven P. Feinstein, and a Motion for Summary Judgment. ECF No. 175; ECF No. 177. On March 30, 2026, the Court denied Defendants' Motion for Summary Judgment and declined to rule, at that time, on Defendants' Motion to Exclude, in Part, The Opinions and Testimony of Professor Steven P. Feinstein. ECF No. 208.

Q.     On February 18, 2026, Lead Plaintiff filed the Revised Third Amended Class Action Complaint for Violation of the Federal Securities Laws. ECF No. 187.

R.     On February 20, 2026, Lead Plaintiff filed an Assented to Motion to Provide Notice to the Certified Class. ECF No. 190. The Court granted this motion on February 25, 2026. ECF No. 197.

S.     On March 23, 2026, Lead Plaintiff filed an Assented to Conforming Complaint for Violation of the Federal Securities Laws ("Conforming Complaint"). ECF No. 203. Defendants filed their Answer and Affirmative Defenses to the Conforming Complaint on March 30, 2026. ECF No. 210.

T.     On April 1, 2026, Lead Plaintiff filed a Motion to Bifurcate Trial and a Motion in Limine to Designate Certain Current and Former Biogen Employees as Witnesses "Identified with an Adverse Party." ECF No. 211; ECF No. 212.

U.     On April 2, 2026, the Parties attended a pre-trial status conference with the Court. ECF No. 214.

5

V.      Discovery in the Litigation commenced shortly after the PSLRA's automatic discovery stay was lifted on March 19, 2024, with the issuance of the Order on the Motion to Amend the Judgment and to Amend the Complaint. In the course of discovery, Defendants produced 57,988 documents to Lead Plaintiff, and Lead Plaintiff served subpoenas on 40 third parties, all of whom produced documents. The Parties met and conferred many times and exchanged numerous correspondence regarding their respective discovery requests. The Parties also briefed a dispute concerning the number of depositions afforded each party in this matter, but resolved the dispute following the Court's input. Lead Plaintiff took the deposition of 14 fact witnesses and Defendants' two expert witnesses. Defendants took the deposition of three fact witnesses and Lead Plaintiff's two expert witnesses. The Parties completed fact discovery in January 2025 and expert discovery in April 2025.

W.      The Settling Parties participated in formal mediation on April 1, 2025 before David Murphy of Philips ADR. The case did not settle during the April 1, 2025 mediation session. In February 2026, the Parties reengaged Mr. Murphy, who issued a mediator's proposal on April 3, 2026, following several days of negotiations. On April 6, 2026, the Settling Parties reached an agreement in principle to settle the Litigation for the Settlement Amount, subject to the negotiation of the terms of a Stipulation and Agreement of Settlement, and approval by this Court.

X.      On April 6, 2026, the Settling Parties notified the Court of the agreement-in-principle to settle the case and the Court entered a Settlement Order of Dismissal on April 7, 2026. ECF No. 215.

Y.      Lead Plaintiff believes that the claims asserted in the Litigation have merit. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and risk of proceeding through trial in this Litigation against Defendants. This is a complex matter, asserting

class-wide securities fraud claims against a backdrop of federal regulatory review and health insurance reimbursement for new medical treatments. Accordingly, there was significant uncertainty of prevailing at trial, the risks posed by post-trial motions, and the risks posed by potential appeals. Lead Plaintiff and Lead Counsel also are aware of the burdens of proof under, and possible defenses to, the securities law violations asserted in the Litigation, which may significantly imperil or erode the Class's recovery.

Z.    Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class in light of the risk of Defendants' prevailing at trial and in any subsequent appeals. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class, and is fair, reasonable, and adequate.

AA.    Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed as or deemed to be evidence of or an admission or concession on the part of any of the Released Defendant Parties with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Released Defendant Parties have, or could have, asserted. The Released Defendant Parties expressly deny that Lead Plaintiff has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants maintain that they have meritorious defenses to all of the claims alleged in the Litigation. Defendants are entering into the Settlement solely to eliminate the burden, expense, and uncertainties of further litigation.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among Lead Plaintiff (for itself and all the members of the Class), on the one hand, and Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of

the Court, pursuant to Rule 23(e), in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Released Plaintiff Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice upon and subject to the terms and conditions of the Stipulation as set forth below.

### 1. Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any member of the Class who submits a timely and valid Proof of Claim and Release form, substantially in the form contained in Exhibit A-2 attached hereto, and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to Class Members and to administer the Settlement.

1.3    "Class" means all persons and entities who purchased or otherwise acquired common stock of Biogen Inc. between June 8, 2021 and July 12, 2021, inclusive (the "Class Period"). Excluded from the Class are Defendants and their immediate families, Biogen's officers and directors at all relevant times, as well as their immediate families, Defendants' legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class is any Person who timely and validly seeks exclusion from the Class, or who has already done so, or whose request for exclusion is accepted by the Court, provided that, any request for exclusion to the Court must be made no later than fourteen (14) calendar days prior to the Settlement Hearing.

1.4    "Class Member" means a Person who falls within the definition of the Class as set forth in ¶ 1.3 above.

1.5    "Class Period" means the period from June 8, 2021 to July 12, 2021, inclusive.

1.6    "Court" means the United States District Court for the District of Massachusetts.

1.7    "Defendants" means Biogen Inc., Michel Vounatsos, and Alisha Alaimo.

1.8    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 8.1 of the Stipulation have been met and have occurred, or have been waived.

1.9    "Escrow Account" means the account controlled by the Escrow Agent into which the Settlement Amount shall be deposited by or on behalf of Defendants as described in ¶ 3.1 below.

1.10    "Escrow Agent" means The Huntington National Bank, or its successor(s).

1.11    "Fee and Expense Award" is defined in ¶ 7.1 below.

1.12    "Final" means, when used in connection with any court judgment or order, when the last of the following events shall occur with respect to the Judgment approving the Settlement, in the form of Exhibit B attached hereto: (i) the expiration of the time to file a motion to alter or amend the Judgment under Rule 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 30th day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 30th day; and (iii) if a motion to alter or amend is filed under Rule 59(e) or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the

consummation of the Settlement in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses or any Plan of Allocation of the Settlement Fund.

1.13    "Judgment" means the final judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B, or such other substantially similar form agreed to by the Settling Parties.

1.14    "Lead Counsel" means Block & Leviton LLP.

1.15    "Lead Plaintiff" means Oklahoma Firefighters Pension and Retirement System.

1.16    "Net Settlement Fund" means the Settlement Fund less: (i) the amount of the Fee and Expense Award and any award to Lead Plaintiff as allowed under the PSLRA, if and to the extent allowed by the Court; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.17    "Notice" means the Notice of Proposed Settlement of Class Action to be sent to Class Members, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-1.

1.18    "Notice and Administration Expenses" means the fees and expenses actually incurred in connection with providing notice, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing claim forms, and paying escrow fees and costs, if any.

1.19    "Notice Order" is defined in ¶ 4.1 below.

10

1.20    "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

1.21    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby, subject to Court approval, the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation and the Released Defendant Parties shall have no responsibility or liability with respect to the Plan of Allocation.

1.22    "Released Plaintiff Claims" means any and all claims, demands, losses, rights, and causes of action of every nature and description whatsoever, whether known or Unknown Claims, as against the Released Defendant Parties that have been or could have been asserted in this or any other action that arise out of, are based upon, or relate in any way, directly or indirectly, to either: (a) claims asserted in any complaint, amended complaint, or proposed amended complaint filed in the Litigation; (b) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in any complaint, amended complaint, or proposed amended complaint filed in this Litigation, or which could have been alleged in this Litigation; or (c) claims related to the purchase, acquisition, holding, sale, or disposition of Biogen securities by any Class Member during the Class Period, including Unknown Claims as defined in ¶ 1.31 herein, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class, or individual in nature, which the Settling Parties, on behalf of themselves, and their respective heirs,

11

estates, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacities as such will release as against the Released Defendant Parties (as defined in ¶ 1.24 herein) upon the Effective Date. Released Plaintiff Claims shall not include (a) any claims relating to the enforcement of the Settlement or (b) any claims of any Person that submits a request for exclusion from the Class that is accepted by the Court, provided that, any request for exclusion to the Court must be made no later than fourteen (14) calendar days prior to the Settlement Hearing.

1.23    "Released Defendant Claims" means all claims and causes of action of every nature and description, whether known or Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class, or individual in nature that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, which Defendants will release as against the Released Plaintiff Parties (as defined below) upon the Effective Date. Released Defendant Claims shall not include any claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion that is accepted by the Court, provided that, any request for exclusion to the Court must be made no later than fourteen (14) calendar days prior to the Settlement Hearing.

1.24    "Released Defendant Parties" means: (i) Defendants; and (ii) each of their respective current and former officers, directors, family members, general partners, limited partners, principals, shareholders, joint venturers, members, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors,

12

professional advisors, investment bankers, underwriters, representatives, insurers and their reinsurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, estates, executors, administrators, and any controlling person thereof in their capacities as such.

1.25    "Released Plaintiff Parties" means: (i) Lead Plaintiff and other Class Members; and (ii) each of their respective current and former officers, directors, family members, general partners, limited partners, principals, shareholders, joint venturers, members, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, including Lead Counsel, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, in their capacities as such.

1.26    "Settlement Amount" means $18,900,000 (Eighteen Million Nine Hundred Thousand Dollars).

1.27    "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon after being transferred to the Escrow Account.

1.28    "Settlement Hearing" is defined in ¶ 4.3 below.

1.29    "Settling Parties" means, collectively, Lead Plaintiff on behalf of itself and the Class Members, and Defendants.

1.30    "Summary Notice" means the Summary Notice of Proposed Settlement of Class Action to be sent to Class Members, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-3.

1.31    "Unknown Claims" means any Released Plaintiff Claims or Released Defendant Claims that Defendant, Lead Plaintiff, or any other Class Member does not know or suspect to

13

exist in such party's favor at the time of the release, which, if known by such party, might have affected such party's decision to settle or release claims.  Upon the Effective Date of the Settlement, Defendants, Lead Plaintiff and the Class shall expressly waive, and be deemed to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date of the Settlement, Defendants, Lead Plaintiff, and the Class shall expressly waive, and be deemed to have waived, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by law of any state or territory of the United States, or principle of common law that are similar, comparable, or equivalent to California Civil Code § 1542.  Defendants, Lead Plaintiff, and the Class shall be deemed to have, and by operation and order of final judgment shall have fully, finally, and forever settled and released all Released Plaintiff Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts.

### 2.  CAFA Notice

2.1     The Defendants shall determine the form of notice to be provided for the purpose of satisfying the requirements of the Class Action Fairness Act ("CAFA Notice"), 28 U.S.C. § 1715, and the identity of those who will receive the CAFA Notice.  Pursuant to CAFA, no later than ten (10) calendar days after the Settlement Agreement is filed with the Court, Defendants, at

their own cost, shall serve proper notice of the proposed Settlement upon those who are entitled to such notice pursuant to CAFA.

### 3. The Settlement

#### a. The Settlement Fund

3.1     Defendants shall pay or shall cause to be paid by their insurers the Settlement Amount into an interest-bearing escrow account controlled by Lead Counsel within 15 business days after the later of (i) entry of an order by the Court preliminarily approving the Settlement; and (ii) Lead Counsel having sent Defendants customary written instructions, which can be verbally verified, in a form acceptable to Defendants and their insurers to pay the Settlement Amount by check or wire into the escrow account, including, but not limited to, a non-P.O. Box address with a contact name for the recipient and wire instructions, bank name and address, ABA routing number, account name, account number, SWIFT Code, and receipt of verbal verification of the same from an authorized individual whose contact information will be provided, along with Form W-9s for the escrow account.

3.2     The payment described in ¶ 3.1 above is the only payment to be made by or on behalf of Defendants in connection with this Settlement. Once that payment is made, Defendants shall have no further monetary obligation of any sort or kind to Lead Plaintiff, members of the Class, or any counsel for Lead Plaintiff under the terms and conditions of the Settlement.

#### b. The Escrow Agent

3.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 3.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All costs

and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

3.4    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation after the Effective Date, by an Order of the Court, or with the prior written agreement of Defendants' counsel.

3.5    Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

3.6    All funds held by the Escrow Agent shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

3.7    Prior to the Effective Date, Lead Counsel, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $500,000.00 in Notice and Administration Expenses.  Prior to the Effective Date, payment of any Notice and Administration Expenses exceeding $500,000.00 shall require notice to, and agreement from, the Defendants, through Defendants' counsel, which agreement shall not be unreasonably refused.  Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by Lead Counsel to pay all reasonable and necessary Notice and Administration Expenses.

**c.  Taxes**

3.8    (a)    The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition,

the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 3.8, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file, or cause to be filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)).  Such returns (as well as the election described in ¶ 3.8(a) hereof) shall be consistent with this ¶ 3.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned on the Settlement Amount shall be paid out of the Settlement Fund as provided in ¶ 3.8(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned on the Settlement Amount, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned on the Settlement Amount for any period during which the Settlement Amount does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 3.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and

distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 3.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Settlement Fund shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for Taxes and Tax Expenses (including, without limitation, taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Escrow Account without prior order from the Court or approval of Defendants, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability therefor.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 3.8.

(d)     Except as required by ¶ 3.1 concerning payment of the Settlement Amount, the Released Defendant Parties are not responsible for Taxes, Tax Expenses, Notice and Administration Expenses, nor shall they be liable for any claims with respect thereto.

### d.  Termination of Settlement

3.9     In the event the Settlement is not approved, is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom, or is successfully collaterally attacked,

the Settlement Fund (including accrued interest) less expenses actually incurred or due and owing for Notice and Administration Expenses, Taxes or Tax Expenses, pursuant to ¶¶ 3.7 or 3.8, respectively, shall be refunded to such Persons that paid the Settlement Amount pursuant to written instructions from Defendants' counsel.

### 4.  Notice Order and Settlement Hearing

4.1    Promptly after execution of this Stipulation, Lead Counsel shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court and shall apply for entry of an order (the "Notice Order"), in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation and approval of the mailing of the Notice in the form of Exhibit A-1 and publication of the Summary Notice in the form of Exhibit A-3, both attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the application for the Fee and Expense Award, and the date of the Settlement Hearing (defined in ¶ 4.3 below). The Summary Notice shall generally describe the Settlement set forth in the Stipulation as well as Class Members' rights and direct potential Class Members to the Claims Administrator's website for more information.

4.2    It shall be the Claims Administrator's responsibility, under supervision of Lead Counsel, to disseminate the Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure of the notice process.

4.3    Lead Counsel shall request that after Notice is given to the Class, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.

19

At or after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Award.

**5. Releases**

5.1    Upon the Effective Date, Lead Plaintiff and each of the Class Members, on behalf of themselves, and their respective heirs, estates, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacities as such, and anyone claiming through or on behalf of any of them, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged against the Released Defendant Parties (whether or not such Person executes and delivers a Proof of Claim and Release form) any and all Released Plaintiff Claims (including, without limitation, Unknown Claims). Claims to enforce the terms of this Stipulation are not released. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of § 1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.

5.2    Upon the Effective Date, Lead Plaintiff and each of the Class Members and their respective heirs, estates, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacities as such, and anyone claiming through or on behalf of them, shall be permanently barred and enjoined (whether or not such Person executes and delivers a Proof of Claim and Release form) from the commencement, assertion, institution, maintenance, prosecution, or enforcement against any of the Released Defendant Parties of any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum,

20

or forum of any kind, asserting any of the Released Plaintiff Claims. This provision shall not apply to anyone who is excluded from the Class pursuant to the terms of this Stipulation.

5.3     The Proof of Claim and Release to be executed by Class Members shall release all Released Plaintiff Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto; provided, however, that the failure of a Class Member to submit such Proof of Claim and Release shall have no effect on the provisions of the foregoing ¶¶ 5.1 and 5.2, inclusive, which shall remain in full force and effect as to each of the Class Members (who have not validly opted out of the Class) irrespective of any lack of submission of a Proof of Claim and Release.

5.4     Upon the Effective Date, the Released Defendant Parties shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Plaintiff Parties, all Released Defendant Claims. Claims to enforce the terms of this Stipulation are not released.  For the avoidance of doubt, the releases, relinquishments and discharges provided by the Released Defendant Parties in this Stipulation do not include the release, relinquishment or discharge of any claim or cause of action that any of the Released Defendant Parties may have against an insurer for, arising out of or related to insurance coverage for, arising out of or related to the Litigation or any other matter.

5.5     In accordance with 15 U.S.C. § 78u-4(f)(7), claims for contribution arising out of any claims, demands, losses, rights, and causes of action of every nature and description whatsoever, including, but not limited to, any claims that arise out of the Litigation (a) by any Person against a releasee, and (b) by any releasee against any Person other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.

## 6. Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund

6.1    The Claims Administrator, subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2    In accordance with the schedule set forth in the Notice Order, Lead Counsel will cause the Claims Administrator to mail to all shareholders of record, as previously identified by the Claims Administrator during the Notice period associated with the Court's Order granting certification of the class, the Notice, substantially in the form of Exhibit A-1 attached hereto, and a Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto. The Notice shall set forth the terms of the Stipulation, including the proposed Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; the date and time of the Settlement Hearing; the right to object to the Settlement, proposed Plan of Allocation, or request for fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class. Lead Counsel will also cause the Claims Administrator to publish in *Investor's Business Daily* and in a newswire release the Summary Notice, substantially in the form of Exhibit A-3 attached hereto. The Summary Notice will generally describe the terms of the Stipulation and Class Members' rights. The Notice, Summary Notice, and Proof of Claim and Release form shall also be posted on the Claims Administrator's website.

6.3    The Settlement Fund shall be applied as follows:

(a)    to pay all reasonable Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses described in ¶ 3.8 hereof;

22

(c)    to pay the Fee and Expense Award;

(d)    to pay any award to Lead Plaintiff as allowed under the PSLRA, subject to the approval of the Court; and

(e)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.4    Upon the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.5    Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, postmarked or submitted electronically by no later than ninety (90) calendar days after the Notice Date (as defined in Exhibit A attached hereto), or such other time as the Court may set, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

6.6    Except as otherwise ordered by the Court, all Class Members who fail to submit a Proof of Claim and Release by such date, or who submit a Proof of Claim and Release that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and be bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No person shall have

23

any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator by reason of the decision to exercise or not exercise such discretion.

6.7    The Claims Administrator shall calculate the claims of Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its pro rata share of the Net Settlement Fund.

6.8    Other than in the event of the termination of the Settlement pursuant to ¶ 3.9, the Released Defendant Parties shall not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the distribution of the Net Settlement Fund, the Claims Administrator at Lead Counsel's direction shall, if feasible, redistribute such balance among Authorized Claimants who negotiated the checks sent in the initial distribution. These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is de minimis, such that it is no longer feasible or economical to make further distributions. Any such amount that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to a non-profit, non-sectarian 501(c)(3) organization to be mutually agreed upon by Lead Counsel and counsel for Defendants, or as ordered by the Court.

6.9    The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

6.10    The Released Defendant Parties shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.  The Released Defendant Parties will have no involvement in reviewing or challenging claims.

6.11    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  Class Members and Released Defendant Parties shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

6.12    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, Defendants' counsel, any of the other Released Plaintiff Parties or Released Defendant Parties, or their respective counsel, or the Claims Administrator based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or otherwise as further ordered by the Court.  This does not include any claim by any party for breach of this Stipulation.

**7.  Lead Counsel's Attorneys' Fees and Expenses**

7.1    Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) interest

25

on both amounts as earned by the Settlement Fund (until paid) as may be awarded by the Court. Any and all such fees, expenses and charges awarded by the Court (the "Fee and Expense Award") shall be payable solely out of the Settlement Fund. Lead Plaintiff may submit an application consistent with the PSLRA based on its representation of the Class. Any such amounts awarded to Lead Plaintiff shall be paid from the Settlement Fund.

7.2     The Fee and Expense Award shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon entry of an order by the Court granting such award. In the event that the Effective Date does not occur, or the Net Settlement Fund is not distributed, or the order making the Fee and Expense Award pursuant to ¶ 7.1 is reversed or modified by final non-appealable order, or the order allowing an award to Lead Plaintiff is reversed or modified by final non-appealable order, or if this Stipulation is cancelled or terminated for any reason, and in the event any part of the Fee and Expense Award or the award to Lead Plaintiff has been paid, then Lead Counsel or Lead Plaintiff, as applicable, shall, in an amount consistent with such reversal, modification, cancellation or termination, refund such fees or expenses to the Settlement Fund, plus interest earned thereon at the same rate as earned on the Settlement Fund, within twenty (20) business days from receiving notice from Defendants' counsel or from a court of competent jurisdiction.

7.3     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award, or the award to the Lead Plaintiff, to be paid out of the Settlement Fund, are not part of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or an award to Lead Plaintiff, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the

26

finality of the Judgment approving the Stipulation and the Settlement of the Litigation (including the releases contained herein).

7.4    Neither the Released Defendant Parties nor their insurers shall have any responsibility for or liability with respect to the payment of any award to Lead Plaintiff or any Fee and Expense Award to Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award or award to Lead Plaintiff that the Court may make in the Litigation.

## 8.   Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

8.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)    the Court enters the Notice Order granting preliminary approval of the Settlement, as required by ¶ 4.1 hereof;

(c)    the Settlement Amount is deposited into the Escrow Account as provided by ¶ 3.1 hereof;

(d)    Defendants do not exercise their option to terminate the Stipulation pursuant to ¶ 8.3 hereof;

(e)    the Court enters an Order granting Final Approval of the Settlement and enters Judgment that dismisses with prejudice the Litigation as set forth above; and

(f)    the Judgment becomes Final, as defined in ¶ 1.12 hereof.

8.2    As of the Effective Date, the Released Defendant Parties, their insurance carriers, and/or any other such persons or entities funding the Settlement on the Released Defendant Parties'

behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.  Upon the occurrence of all of the events referenced in ¶ 8.1 hereof, any and all remaining interest or right of the Released Defendant Parties, if any, in or to the Settlement Fund shall be absolutely and forever extinguished.  If all of the conditions specified in ¶ 8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶ 8.4 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

8.3    If, prior to the Settlement Hearing, Persons who otherwise would be members of the Class have timely requested exclusion from the Class in accordance with the provisions of the Notice Order and the Notice given pursuant thereto, and such Persons in the aggregate purchased a number of shares of Biogen common stock during the Class Period in an amount equal to or greater than the sum specified (the "Opt-Out Threshold") in a separate Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement") executed between Lead Plaintiff and Defendants, Defendants shall have the option, at their sole discretion, to terminate this Stipulation and Settlement in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement is incorporated by reference into this Stipulation. The Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential. Copies of all requests for exclusion received, together with copies of all written revocations of requests for exclusion, shall be promptly delivered to Defendants' counsel by Lead Counsel.

8.4    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within twenty (20) business days after

written notification of such event is sent by counsel for Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund, less reasonable Notice and Administration Expenses, Taxes, and Tax Expenses reasonably and actually incurred pursuant to ¶¶ 3.7 or 3.8 hereof, shall be refunded pursuant to written instructions from Defendants' counsel.  At the request of counsel for Defendants, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, at the written direction of Defendants' counsel.

8.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall not forfeit or waive any factual or legal defense or contention in the Litigation and shall be restored to their respective positions in the Litigation as of April 6, 2026.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.1-1.31, 3.7-3.9, 7.2, 8.4-8.5, 9.2, 9.4, and 9.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, nunc pro tunc, and the Settling Parties shall be deemed to return to their status as of April 6, 2026.  No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees and expenses, and interest awarded by the Court to Lead Counsel, or the amount of any award to Lead Plaintiff, shall constitute grounds for cancellation or termination of the Stipulation.

### 9.  Miscellaneous Provisions

9.1     The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     The Settlement will not be conditioned upon the obtaining of or any judicial approval of any releases between or among the Released Defendant Parties or third parties.

9.3     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement and all negotiations, discussions, and proceedings leading up to and in connection herewith shall not be deemed to constitute a presumption, concession, or an admission by any Settling Party of any fault, liability, or wrongdoing, or as to the merits of any claim or defense.

9.4     The Settling Parties and their counsel mutually agree that, throughout the course of this Litigation, all parties and their counsel complied with the provisions of Rule 11 relating to the prosecution, defense or settlement of the Litigation, and the Judgment shall contain a finding that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Litigation.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.5     Neither the Stipulation nor the Settlement contained herein, nor any negotiations, discussions, proceedings or act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Plaintiff Claim, or of any wrongdoing or liability of the Released Defendant Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of Released Defendant Parties in any civil, criminal,

30

or administrative proceeding in any court, administrative agency, or other tribunal. The Released Defendant Parties, Lead Plaintiff, Class Members, and Lead Counsel may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in connection with any proceeding to enforce the terms of this Stipulation.

9.6     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of documents and information shall survive this Stipulation, pursuant to its terms.

9.7     The Settling Parties shall, in good faith, endeavor to communicate the terms of the Settlement, if at all, in a manner that is respectful of the fact that no final adjudication of fault was determined by a court or a jury. The Settling Parties agree that, unless required by law, no press release or other written public statements purporting to characterize the Settlement may be made without the approval of counsel for all parties as to the contents of the press release or written public statement, which approval shall not unreasonably be withheld. A party intending to issue a press release or other written public statement purporting to characterize the Settlement shall provide a draft of the statement to counsel for the other parties at least 24 hours in advance of such statement. For the avoidance of doubt, nothing in this paragraph shall be construed as prohibiting, or placing restrictions on, the public disclosure of the fact of, terms of, or Court-approved notice of the Settlement, including on Plaintiff's counsel's firm website or in filings under securities law regulations or the regulations of any stock exchange.

31

9.8    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.9    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and that all parties have contributed substantially and materially to the preparation of this Stipulation.

9.10    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.11    No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.12    The Stipulation and the Exhibits attached hereto (together with the Supplemental Agreement referred to in ¶ 8.3) constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

9.13    This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including

in the Litigation, and as more fully described herein. If any provision of this Settlement Agreement is determined to be invalid, illegal, or unenforceable, all of the other terms and provisions shall remain in full force and effect to the extent that their continuance is practical and consistent with the original intent of the Settling Parties and does not subject a party to undue prejudice. In addition, if any provisions are held invalid, illegal, or unenforceable, the Settling Parties shall attempt in good faith to renegotiate this Settlement Agreement to carry out its original intent, though neither party shall be required to modify or waive any right held under this Settlement Agreement.

9.14    Neither the Class Members nor the Released Defendant Parties shall be bound by the Stipulation if the Court modifies material terms thereof, provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Class Members, or the Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorney's fees or expenses or the distribution of the Net Settlement Fund or any award to Lead Plaintiff. Notwithstanding any such modification of the terms or Plan of Allocation or the Stipulation with respect to attorneys' fees or expenses or any award to Lead Plaintiff, the Released Defendant Parties and their insurers shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Amount.

9.15    Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which it deems appropriate.

33

9.16    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

9.17    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

***If to Lead Plaintiff or to Lead Counsel:***

Michael D. Gaines
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110

***If to Defendants or to Defendants' counsel:***

Michael S. Hines
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116

9.18    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or by PDF via e-mail shall be deemed originals.

9.19    The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

9.20    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.21    Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all members of the Class shall be barred and enjoined from commencing any action to prosecute or prosecuting any of the Released Plaintiff Claims against any of the Released Defendant Parties.

9.22    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the Commonwealth of Massachusetts, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Massachusetts, without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated June 5, 2026.

**BLOCK & LEVITON LLP**

Jeffrey C. Block (BBO# 600747)
Jacob A. Walker (BBO# 688074)
Michael D. Gaines (BBO# 698769)
Brendan Jarboe (BBO# 691414)
Mark B. Byrne (BBO# 706997)
Zoe van Vlaanderen (BBO# 715829)
260 Franklin St., Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com
michael@blockleviton.com

35

brendan@blockleviton.com
mark@blockleviton.com
zoe@blockleviton.com

*Attorneys for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System
and the Certified Class*

**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**

James R. Carroll (BBO# 554426)
Michael S. Hines (BBO# 653943)
Maya P. Florence (BBO# 661628)
Yaw A. Anim (BBO# 569512)
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800 phone
james.carroll@skadden.com
michael.hines@skadden.com
maya.florence@skadden.com
yaw.anim@skadden.com

*Attorneys for Defendants Biogen Inc.,
Michel Vounatsos, and Alisha Alaimo*

36